UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: APOLLONIA CHA'NELL MILLS,

    Debtor.
_____/

TIMOTHY J. MILLER, TRUSTEE,

    Appellant,                                      Case No. 20-11306

v.                                                       Honorable Nancy G. Edmunds

DETROIT LAND DEVELOPMENT
COMPANY,

    Appellee.
_____/

**OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT**

    The matter comes before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Michigan. The Chapter 7 Trustee in the underlying bankruptcy action, Timothy J. Miller, appeals from the Bankruptcy Court's May 8, 2020 order denying his motion for summary judgment and granting Detroit Land Development Company's motion for summary judgment in an adversary proceeding he filed under 11 U.S.C. § 547. The Court has reviewed the record in its entirety and finds a hearing is not necessary. *See* Fed. R. Bankr. P. 8013(c). For the reasons set forth below, the Court AFFIRMS the Bankruptcy Court's order.

**I.    Standard of Review**

    The Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). The Bankruptcy Court's

1

findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo. *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 225 (6th Cir. 2009) (citations omitted). "De novo means that the appellate court determines the law independently of the trial court's determination." *In re Myers*, 216 B.R. 402, 403 (B.A.P. 6th Cir. 1998) (citation omitted). The parties agree the issues raised in this appeal are questions of law subject to de novo review.

## II. Legal and Factual Background

Appellant filed an adversary proceeding in the underlying bankruptcy case to avoid the transfer of a property made to Appellee within ninety days of the bankruptcy petition date pursuant to 11 U.S.C. § 547(b), which sets forth that

> the trustee may . . . avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The only issue in this case is whether the requirement set forth in § 547(b)(5) can be established. This subsection requires a finding that the transfer enabled the creditor to receive more than it would receive had the estate been liquidated under Chapter 7 and

2

the disputed transfer not been made. *See In re C-L Cartage Co.*, 899 F.2d 1490, 1493 (6th Cir. 1990). This is known as the "more than" test. *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 461 n.1 (6th Cir. 1991). Payments to a creditor who is fully secured are not preferential because the creditor would receive payment up to the full value of the collateral in a Chapter 7 liquidation, while payments to an unsecured or undersecured creditor are preferential. *In re C-L Cartage Co.*, 899 F.2d at 1493.

As set forth in the joint final pretrial order, the parties stipulated to the following facts:

> i. Debtor filed a voluntary petition for Chapter 7 bankruptcy under Title 11 of the United States Code on April 30, 2019;
> ii. On March 10, 2014, Debtor and Defendant Detroit Land Development Company entered into a land contract for the purchase of certain real property located at 7706 W. Seven Mile, Detroit, MI ("the Property");
> iii. Also on March 10, 2014, Defendant's authorized agent Michael Kelly signed a quitclaim deed purportedly transferring 7706 W. Seven Mile, Detroit, MI ("the Property") to the Debtor. This deed was recorded on March 11, 2014 at the Wayne County Register of Deeds;
> iv. The March 10, 2014 deed makes no reference to a land contract or security interest of any type, and no security interest or memorandum of land contract was ever recorded by the Defendant contemporaneously with the signing of the land contract;
> v. Also on March 10, 2014, Debtor signed a quitclaim deed purportedly transferring the Property to Defendant.
> vi. On February 19, 2019, Defendant's agent recorded the March 10, 2014 deed transferring the Property to the Defendant ("the Transfer");
> vii. Defendant's claim against the Debtor is derived from the Land Contract;
> viii. The Transfer took place within 90 days prior to the Debtor's petition date; and
> ix. Debtor was insolvent at the time of the Transfer.

(ECF No. 3, PageID.105-06.) The Bankruptcy Court made the following additional findings of fact:

> Defendant had originally received title to the property through a quit claim deed from the Wayne County treasurer dated and recorded on October 11, 2013. The subsequent land contract listed a purchase price for the property

3

> of $30,000 to be paid in monthly installments of $450.  Under the terms of the land contract, defendant had the following duty to convey.  The sellers or his assigns will execute and deliver to the buyer on the payment in full of all sums owing under this agreement a quit claim deed or special warranty deed conveying title to the property.  The parties agree that the deed will be executed and delivered to the buyer at the time this agreement is satisfied.

(ECF No. 5, PageID.218; *see also* ECF No. 3, PageID.170-71.)

The matter came before the Bankruptcy Court on cross-motions for summary judgment.  Appellant argued the first deed served to transfer all of Appellee's interest in the property to Debtor, and if it were not for the second deed conveying Debtor's interest back to Appellee, record title in the property would have remained with Debtor.  Therefore, because the transfer improved Appellee's status as compared to other general unsecured creditors, it is a preference under § 547(b)(5).  Appellee argued, however, that its interest in the property was not transferred to Debtor by the first deed because that deed was not delivered and, therefore, did not take effect.  According to Appellee, as a land contract vendee, Debtor only had an equitable interest in the property, and this was the interest that was conveyed by the recording of the second deed.  Thus, the second transfer did not cause any diminution of the bankruptcy estate, and there is no preferential transfer to be avoided.

In support of its argument that the first deed was not delivered, Appellee submitted two affidavits. In the first affidavit, the president of Appellee explained in relevant part the following:

> 4. At the time the Land Contract was executed, two quit claim deeds were executed on that same day.  The first was from [Appellee] to convey its interests in the property to [Debtor] to be held in escrow until the purchase price was satisfied.  Delivery of the deed was intended to take place upon satisfaction.  The second was from [Debtor] to [Appellee] to convey her interests in the property to be held in escrow in the event she defaulted on

4

> the Land Contract pursuant to the provisions of Paragraph 15 of the Land Contract. Delivery of the deed was intended to take place, at [Appellee]'s discretion, upon the default of the Land Contact by [Debtor].
> 5. Over the course of the next five years, [Debtor] made sporadic payments of the monthly installments required by the Land Contract while defaulting on her monthly payments as well as the payments of property taxes on numerous occasions.
> 6. To enforce its rights as vendor under the Land Contract, [Appellee] commenced at least six summary proceedings for possession of land contract forfeiture against [Debtor] for nonpayment of the monthly installments and/or property taxes in the 36th District Court for the State of Michigan, four of which were commenced between January 2018 and January 2019.
> 7. In February 2019, [Debtor] defaulted on her Land Contract obligations once again. Therefore, after sending her the required notice of forfeiture, I on behalf of [Appellee] declared [Debtor's] interests in Land Contract forfeited and accepted delivery of the March 10, 2014 deed she signed conveying the property to [Appellee] and had it recorded with the Wayne County Register of Deeds on February 19, 2019, with the intent of converting her interests in the property to a tenancy.
> 8. After I recorded the deed on February 19, 2019, I learned that the deed conveying [Appellee]'s interest in the subject property to her had been recorded on March 11, 2014.
> 9. After discovering that the deed had been recorded, I spoke to my friend and [Debtor's] father, Irving Seals, who attended the closing on the Land Contract and had often paid money owed by [Debtor] under the Land Contract so she could avoid eviction.
> 10. Mr. Seals told me that he believes that after the Land Contract was executed, he took possession of his daughter's copy of the contract and other documents, which inadvertently contained the signed deed from [Appellee] to [Debtor] and he either inadvertently recorded it or gave it to his daughter who might have recorded it.
> 11. At no time did [Appellee] or I intend to record the deed from [Appellee] to [Debtor] or transfer any interests in the subject property to her beyond the interests she held as the Land Contract vendee.

(ECF No. 3, PageID.168-69.) A second affidavit from Mr. Seals confirms he believes it is likely that he is responsible for the recording of the first deed and that he did not realize this error until 2019. (*Id.* at PageID.177.) Appellee also submitted documents from the state court proceedings it initiated for possession after land contract forfeiture. (*Id.* at PageID.178-89.)

5

The Bankruptcy Court ruled from the bench, first noting that Appellant did not address any of the caselaw regarding delivery.  According to the relevant case law, the recording of a deed creates a presumption of delivery.  The Bankruptcy Court found, however, that Appellant had presented sufficient evidence to rebut the presumption in this case.  Because there was no valid delivery of the first deed, the court found the property never vested in Debtor and denied Appellant's motion for summary judgment.  The court then turned to the cross-motion for summary judgment and noted that Appellant had the ultimate burden to prove delivery, but after Appellee presented evidence there was no intent to deliver title to Debtor, Appellant had not come forward with specific facts supported by evidence in the record showing there is a genuine issue of material fact on the question of delivery.  Thus, the Bankruptcy Court entered summary judgment in favor of Appellee.  Appellant now appeals.

## III.     Analysis

Appellant argues the property vested in Debtor as a matter of law upon the recording of the first deed and the Bankruptcy Court therefore erred when it denied his motion for summary judgment.  Alternatively, Appellant argues there is, at the least, a genuine issue of material fact as to whether the first deed was delivered that should have precluded summary judgment from being entered in favor of Appellee.

Under Michigan law, passage of proper title through a quit claim deed requires legal delivery. *See McMahon v. Dorsey*, 91 N.W.2d 893, 895 (Mich. 1958).  Delivery of a deed is "a matter of the intention of the grantor as manifested and evidenced by the words, acts and circumstances surrounding the transaction."  *Id.* at 895 (internal quotation marks and citations omitted).  "Manual transfer of the deed is not

indispensable to delivery but is evidence of delivery. The controlling factor in determining the question of delivery in all cases in the intention of the grantor . . . ." *Id.* This presumption, however, is not conclusive and may be rebutted by the evidence. *Resh v. Fox*, 112 N.W.2d 486, 488 (Mich. 1961) (citation omitted). "The subsequent conduct of the parties may be taken into consideration in determining whether there was an intention to pass title. This may be done despite the presumption of passage of title arising by virtue of possession of the deed by the grantee." *Id.* The recording of a deed similarly creates a presumption of delivery. *Havens v. Schoen*, 310 N.W.2d 870, 871 (Mich. Ct. App. 1981) (citations omitted). "The only effect of this presumption is to cast upon the opposite party the burden of moving forward with the evidence. The burden of proving delivery by a preponderance of the evidence remains with the party relying on the deed." *Id.*

Here, there is no dispute the first deed was manually transferred to Debtor or her father and subsequently recorded. This creates a presumption of delivery. Appellee, however, submitted two affidavits indicating Appellee did not intend to transfer legal title to Debtor at the time. Rather, the deed was to be held in escrow and recorded once the purchase price was completed. Appellant argues the affidavits are self-serving and should be given limited weight. However, the explanations provided by the witnesses were consistent with the parties' subsequent conduct, including Appellee's initiation of several proceedings in state court alleging forfeiture of the land contract and seeking possession of the property. Thus, the Court agrees the evidence submitted by Appellee is sufficient to rebut the presumption of delivery in this case. And Appellant, who retains the burden of proving delivery, did not present any evidence indicating Appellee

7

intended to pass title to Debtor with the first deed. In fact, Appellant initially argued before the Bankruptcy Court that regardless of its intent, Appellee should be held responsible for the ramifications of drafting and transferring the first deed to a third party. Appellant's argument has evolved on appeal and he now argues the pattern of events indicates Appellee intended to pass title with the first deed. More specifically, Appellant points to the plain language of the deed, the fact the land contract was not recorded, and the drafting and recording of the second deed transferring the property back to Appellee.

Even though the first deed does not include any references to the land contract, this does not lead to a conclusion that Appellee intended to convey legal title of the property to Debtor at the time it was recorded. *See generally Ligon v. City of Detroit*, 739 N.W.2d 900, 905 (Mich. Ct. App. 2007) ("A deed takes effect from the time of its delivery, and not from the time of its date, execution or recording."). Nor can intent be inferred from the fact that the land contract was not recorded. Generally, a land contract is "an executory contract in which legal title remains in the seller/vendor until the buyer/vendee performs all the obligations of the contract while equitable title passes to the buyer/vendee upon proper execution of the contract." *See Zurcher v. Herveat*, 605 N.W.2d 329, 341 (Mich. Ct. App. 1999). Thus, there is no requirement that a land contract be recorded. And because Debtor did not fulfill her obligations under the land contract, the only way the property could have vested in her is if the first deed was delivered. Finally, Appellant acknowledged at the hearing before the Bankruptcy Court that by drafting and recording a second deed transferring the property back to Appellee, the parties were circumventing the rules for forfeiture of a land contract under Michigan

law. (ECF No. 5, PageID.207.) Appellant does not now explain how the second deed supports his contention that Appellee intended to convey legal title to Debtor with the first deed despite Appellee's conduct during the intervening five year period.

In sum, the manual transfer and recording of the first deed creates a presumption of delivery under Michigan law, but Appellee submitted sufficient evidence to rebut this presumption. Because Appellant did not present any evidence to the contrary, there is no genuine issue of material fact as to whether a delivery took place. Thus, the property never vested in Debtor and there is no preferential transfer to be avoided. Accordingly, the Bankruptcy Court properly denied Appellant's motion for summary judgment and granted Appellee's motion for summary judgment in the underlying adversary proceeding.

### IV. Conclusion

For the foregoing reasons, the Bankruptcy Court's order is AFFIRMED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 27, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 27, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager